ORIGINAL

1  GEORGE A. YUHAS (State Bar No. 78678)
   gyuhas@orrick.com
2  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
3  405 Howard Street
   San Francisco, CA  94105-2669
4  Telephone:    415-773-5700
   Facsimile:    415-773-5759
5
   Attorneys for Plaintiff Christina Yuni
6

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

11  Christina Yuni,

12              Plaintiff,

13      v.

14  Johannes Leo and Leo Investment Group,

15              Defendants.

16

**C 07 5366**

Case No.

**COMPLAINT FOR INDEPENDENT
ACTION IN EQUITY TO SET ASIDE
DEFAULT JUDGMENT**

17

18

19

20

21

22

23

24

25

26

27

28

OHS West:260290796.1

COMPLAINT FOR INDEPENDENT ACTION IN EQUITY TO SET ASIDE DEFAULT JUDGMENT

Plaintiff Christina Yuni ("Yuni") hereby brings this independent action in equity to set aside the default judgment entered against her in the matter entitled Johannes Leo et al. v. Eastern Vanguard Forex Ltd. et al. previously No. C-99-5367 and alleges as follows:

### JURISDICTION AND PARTIES

1.      This Court has subject matter of this action pursuant to 28 U.S.C. § 1367 because it arises out of and is ancillary to a judgment issued by this Court. Yuni seeks to set aside that judgment and this action is therefore so related to that prior action that it forms part of the same case or controversy and falls within the supplemental jurisdiction of this Court.

2.      Plaintiff Christina Yuni is an individual residing in and a citizen of the State of California.

3.      Defendant Johannes Leo is an individual formerly residing in the State of California and was a plaintiff in a prior action in this court against Yuni and others entitled *Johannes Leo and Leo Investment Group v. Eastern Vanguard Forex Ltd. aka and dba Tokyo International Investment Ltd.*, No. C-99-5367.

4.      Defendant Leo Investment Group is a California corporation and was a plaintiff in a prior action in this court against Yuni and others entitled *Johannes Leo and Leo Investment Group v. Eastern Vanguard Forex Ltd. aka and dba Tokyo International Investment Ltd.*, No. C995367.

### Background Allegations

5.      In 1996, Yuni met Johannes Leo ("Leo") while both were attending the University of San Francisco ("USF"). They soon became close friends.

6.      In 1998, Leo graduated from USF with and received an MBA in Finance with an emphasis in Investment Analysis.

7.      While attending USF, Leo traded actively and successfully in the stock market. Leo maintained an active portfolio and advised Yuni that he had transformed an initial $100,000 investment into more than $3,000,000. Leo was a sophisticated and knowledgeable investor in every meaningful sense.

8.      Following Leo's graduation, he started his own investment firm. In that

OHS West:260290796.1

1   capacity, Leo extensively researched the securities market and developed great sophistication

2   concerning the securities and financial marketplaces.

3       9.    In the Fall of 1998, Leo offered Yuni a position as research assistant. Yuni

4   declined the opportunity but became even closer friends with Leo and began dating him in early

5   1999. At this time, Yuni was still an undergraduate at USF.

6       10.    In or about February 1999, at the age of 20 and while still an

7   undergraduate, Yuni took a job at Tokyo International Investment, LTD ("TII") as an account

8   executive. TII was engaged in the business of foreign currency trading. Yuni had no prior

9   experience with foreign currency trading and no prior affiliation with TII.

10       11.    After beginning her part-time position at TII, Yuni encouraged family and

11   friends to open small accounts there. Yuni was in a dating relationship with Leo at this time, and

12   he decided to open a $25,000 account in late March of 1999. This $25,000 represented a very

13   minor portion of Leo's net worth.

14       12.    Before opening the account, Leo reviewed and signed the standard TII

15   Customer Agreement. In connection with that agreement and Leo's $25,000 account, he gave

16   Yuni discretionary power to place trades in his account which was not uncommon due to the

17   importance of being able to make immediate decisions when currencies were experiencing

18   fluctuations in price during times that it might be impossible to reach the account holder.

19       13.    By mid-May 1999, Leo's account balance had grown to approximately

20   $34,000, representing a gain of more than 33 percent in less than a couple of months. At that

21   time, however, Yuni faxed to Leo a statement showing his balance as approximately $52,000

22   rather than $34,000.

23       14.    Leo invested an additional $100,000 in his account in May 1999. At that

24   time, Leo and Yuni continued to be in a dating relationship. While Yuni maintained a residence

25   of her own, she saw Leo virtually every day and spent much time at his residence. Leo and Yuni

26   were seeing each other so frequently that Leo requested that Yuni bring his account statements to

27   his residence rather than sending them by mail. Yuni did so.

28       15.    While subject to fluctuations, Leo's account at TII continued to experience

OHS West:260290796.1                                - 2 -

COMPLAINT FOR INDEPENDENT ACTION IN EQUITY TO SET ASIDE DEFAULT JUDGMENT

market success during May and June of 1999. Leo's very substantial stock investments in accounts at places other than TII had also performed very well. In July, Leo advised Yuni that he wanted to diversify some of his stock investment gains and, for that purpose, opened an additional account at TII on behalf of the Leo Investment Group in the amount of $100,000.

16.    By July of 1999, Leo was fully involved in the decision-making for all trades made in his TII account and in the Leo Investment Group TII account. While Yuni continued to obtain research and other information through her position at TII and sometimes made recommendations, Leo made the final decision on all TII trades in either account during this time.

17.    By early August 1999, Leo had suffered some modest losses in his TII accounts by reason of his decision to go short in the Japanese yen. Notwithstanding these modest losses that were being carried in his account, Leo advised Yuni in early August 1999 that he believed that the Japanese yen was likely to weaken in light of upcoming events. Leo sought and received input from TII's technical analyst and from Michael Cho of TII. Leo decided to deposit an additional $400,000 in his personal account to gain more leverage in anticipation of what he expected to be a weakening in the yen.

18.    In August 1999, Leo instructed Yuni to use a significant amount of his newly-deposited funds to take a position shorting the Japanese yen in the expectation that it would drop in value. Initially, the yen did drop in value and Leo made money in this position. He instructed Yuni to add even more positions. Unfortunately, the yen began to strengthen. In response, Leo instructed Yuni to add even more short positions in expectation that the yen would reverse course.

19.    The yen continued to strengthen in late August and early September. Leo was fully aware of these developments and their impact on his short positions. Leo deposited an additional $100,000 into his account to increase the capital available to support his existing positions until the yen began to weaken.

20.    In early to mid September of 1999, the yen continued to strengthen, causing Leo to incur additional losses in the positions that he had taken. In an attempt to recoup

OHS West:260290796.1                                        - 3 -

1    these losses, Leo deposited an additional $400,000 and continued to direct trades in his account.

2    Yuni executed these trades at Leo's direction, but Leo made all decisions concerning the trades.

3              21.    Leo's positions continued to lose money in September and early October.

4    On or about October 12, 1999, Leo closed both his personal account and the Leo Investment

5    Group account at TII.

6              22.    During the entire period of February through October 1999, Yuni remained

7    in a close, dating relationship with Leo.  After closing his accounts, Yuni and Leo continued their

8    relationship.  However, Leo advised Yuni that he wanted to sue TII to recover some of his losses

9    and asked Yuni to support him in this effort in light of their close personal relationship.  To assist

10   Leo, Yuni agreed to meet with Leo's counsel and did so.  At no time during these discussions

11   between Yuni and Leo did he indicate to Yuni that he believed that she was responsible for his

12   losses.

13             23.    In mid-December, 1999, Yuni ended her dating relationship with Leo for

14   reasons entirely unrelated to Leo's investment losses.  A few days later, Yuni was served with a

15   summons and complaint filed by Leo and Leo Investment Group suing TII and nine persons and

16   entities associated with TII, including Yuni.

17             24.    At the time Yuni was served with the complaint, she was no longer

18   employed by TII.  Yuni had never before been involved in any type of lawsuit.  Yuni also had

19   very little in the way of assets.

20             25.    Knowing that the complaint was directed entirely at Leo's experience with

21   TII, Yuni contacted Paul Khong at TII to determine whether TII would be handling the matter for

22   her.  Khong advised Yuni that TII's counsel would handle the matter for Yuni and the several

23   other TII employees that had been named as defendants.

24             26.    Because the allegations directed at her related entirely to actions taken

25   while employed by TII, Yuni reasonably believed Khong and TII when she was told that it would

26   provide a defense on her behalf.  At the time Yuni was served with the complaint, she was 21

27   years, unemployed and without resources to defend a complex federal action alleging

28   racketeering, securities violations, and a host of other claims.  Yuni had no reason to doubt Khong

1    or to believe that TII would not be providing a defense.

2    27.    In January of 2000, Yuni left the United States to visit and stay with her

3    family in Indonesia. Before making this trip, Yuni advised Khong that she would be leaving and

4    provided contact information so that, if necessary, he, TII or counsel retained by TII for her and

5    others could contact her. At no time did Khong or anyone else associated with TII advise Yuni

6    that TII would not be providing counsel to represent her in Leo's action.

7    28.    Yuni returned to the United States in October 2000. Between the time of

8    Yuni's return and July 19, 2007, she had no indication that TII had not provided counsel for her

9    in Leo's action or that there had been any sort of adjudication in that action adverse to her. Prior

10    to July 19, 2007, Yuni simply believed that TII was no longer in business and that the matter had

11    settled or otherwise been resolved.

12    29.    On March 5, 2001, Leo and Leo Investment Group applied for a default

13    judgment against Yuni. At that time, Yuni had no knowledge that the case was still pending or

14    that TII had not retained counsel on her behalf.

15    30.    On August 13, 2001, a default judgment was entered against Yuni in the

16    amount of $2,757,558.60 in favor of Leo and in the amount of $419,280.72 in favor of Leo

17    Investment Group. These judgment amounts included, among other things, awards of treble

18    damages pursuant to the federal racketeering statutes. At the time the default judgment was

19    entered, Yuni had no knowledge that the case was still pending or that TII had not retained

20    counsel on her behalf.

21    31.    On July 19, 2007, Yuni was surprised to learn that her wages were being

22    garnished and that her bank account was being attached to pay portions of a default judgment that

23    had been entered against her in August 2001 in Leo's prior action. According to the papers

24    provided to Yuni, the amount owed on that default judgment was claimed to be in excess of

25    $5,000,000 as of July 2007.

26    32.    Prior to the execution on her bank account and the wage garnishment in

27    July of 2007, Yuni had no knowledge that a default judgment had been entered against her in

28    Leo's prior action or that TII had apparently chosen not to provide counsel to represent her.

COMPLAINT FOR INDEPENDENT ACTION IN EQUITY TO SET ASIDE DEFAULT JUDGMENT

## Claim For Relief

33.    Yuni realleges and incorporates by reference the allegations contained in Paragraphs 5 through 32 above.

34.    The default judgment against Yuni entered in the prior action should not, in equity and good conscience, be enforced and said default judgment should be set aside by this Court. That judgment would cause a grave injustice if allowed to remain.

35.    Yuni possesses good defenses to the claims on which the default judgment is based. Among other defenses, Yuni can and will prove that the plaintiffs in the prior action were not misled by Yuni in any material way; that the former plaintiffs did not reasonably rely on any actions of Yuni bearing any relationship to their claimed injury; that Yuri was not a party to any racketeering enterprise or otherwise liable; and that the damages reflected in the default judgment were not proximately caused by any actions taken by Yuni.

36.    The prior default judgment against Yuni was obtained by reason of fraud, accident or mistake that prevented her from obtaining the benefit of a defense. Among other things, Yuni reasonably believed that TII was providing counsel that was representing her in the underlying action and that such counsel would be providing the meritorious defenses that she had to plaintiffs' claims.

37.    Yuni acted reasonable in light of all circumstances and reasonably believed that she was represented in the underlying action; that the underlying action had been settled or otherwise resolved by TII and that no further action on her part was necessary.

38.    In materials respects, the statements made by Leo in support of the default judgment were false and misleading and would not have supported a judgment against Yuni if evidence had been presented on her behalf. Among other misstatements and material omissions made by Leo in his declarations are the following:

a)    Leo asserted that he agreed to invest in currency transactions based on representations made by Yuni. In fact, Leo was far more sophisticated and experienced than Yuni and chose to invest in currency as a means of diversifying his substantial securities portfolio;

COMPLAINT FOR INDEPENDENT ACTION IN EQUITY TO SET ASIDE DEFAULT JUDGMENT

b)        Leo asserted that he received mailed statements in April and May but somehow did not receive mailed statements for months thereafter due to unexplained problems with mail delivery.  In fact, at Leo's request, Yuni was personally delivering statements to Leo on an ongoing basis and Leo was made fully aware of all transactions in his account.

c)        Leo asserted that he first became aware of significant losses in his account on September 6, 1999.  In fact, Leo knew of the transactions taking place in his account prior to that date; had been directing those transactions and was fully aware of the losses that were occurring in the account on an ongoing basis.

d)        Leo asserted that he was a completely passive investor and that Yuni successfully dissuaded him from participating in decisions in his TII account.  In fact, Leo was an experienced and knowledgeable investor who did not and would not entrust hundreds of thousands of dollars to a 21-year old student and was actively involved in his TII account.

e)        Leo asserted that he would not have invested additional funds in his TII account but for Yuni's having provided a May 12 account statement that showed gains larger than those actually realized on his initial $25,000 investment.  In fact, Leo's investment decisions that resulted in his substantial investment losses occurred months after May of 1999; were made despite many subsequent transactions and with knowledge of losses in the account and had nothing to do with the fact that his original $25,000 had grown by "only" forty percent by May 12 rather than by one hundred percent.

39.       Yuni files this independent action in equity to set aside the prior judgment because she has no adequate remedy at law.  The existing $5,000,000 judgment, which consists largely of treble, racketeering damages and interest thereon, is manifestly unjust in the circumstances alleged herein, and Yuni has no other recourse to set it aside.

WHEREFORE, Yuni prays for relief as follows:

1.        That the default judgment entered in the prior action be set aside and that Yuni be permitted to present a defense in that action;

2.        That defendants be enjoined from taking any action to enforce the prior judgment against her;

COMPLAINT FOR INDEPENDENT ACTION IN EQUITY TO SET ASIDE DEFAULT JUDGMENT

3.      That defendants be required to pay her costs of suit herein; and

4.      That this Court award such other and further relief as may be just and proper.

Dated: October 19, 2007

GEORGE A. YUHAS
ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _____
George A. Yuhas
Attorneys for Plaintiff Christina Yuni

OHS West:260290796.1

- 8 -

COMPLAINT FOR INDEPENDENT ACTION IN EQUITY TO SET ASIDE DEFAULT JUDGMENT